**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 18-414** |
| | : | |
| **DAVID TORRES** | : | |

**MEMORANDUM**

**KEARNEY, J.**                                                                                                                 **June 29, 2020**

      After serving approximately fifteen percent of his sentence imposed less than nine months ago, thirty-six-year-old David Torres moves for early release to home confinement or, alternatively, compassionate release from his jail sentence we imposed last November after he pleaded guilty to possession with intent to deliver 500 grams or more of cocaine. He argues extraordinary and compelling reasons exist because he has asthma and faces a heightened risk of contracting COVID-19 in Federal Correctional Institute Coleman–Low in Sumterville, Florida. He offers no other grounds for release. He suffers from asthma, but he does not present the level of health concern necessary for compassionate release or argue another basis for release. We lack the ability to review early release to home confinement under the CARES Act. We deny his motion for compassionate release as he does not present extraordinary and compelling reasons.

      **I.**      **Facts**

      In late September and early October 2013, federal agents began investigating David Torres and others. One co-conspirator set up a meeting with a potential customer in Philadelphia for the purchase of cocaine. At the meeting, Mr. Torres presented the potential buyer with two kilograms of cocaine for inspection, informing the buyer of the cocaine's high quality. When the buyer indicated he needed to obtain cash for the purchase, Mr. Torres and his co-conspirators left the

meeting place in a car still in possession of the cocaine. Agents attempted to stop the car driven by Mr. Torres who fled the area at a high rate of speed. Pursuing agents could not catch up to the car and ended the pursuit. Agents never recovered the cocaine. In September 2018, the United States indicted Mr. Torres for his role in the possession of cocaine in 2013. In November 2018, Drug Enforcement Agency agents arrested Mr. Torres under a federal arrest warrant after being observed leaving a premises and entering a car where agents recovered $10,000 in cash.

Mr. Torres pleaded guilty on July 12, 2019. On November 1, 2019, we sentenced Mr. Torres to a term of sixty-three months imprisonment followed by five years of supervised release after he pleaded guilty to one count of possession with intent to distribute 500 grams or more of cocaine.

He is now serving his sentence at Federal Correctional Institute Coleman–Low in Sumterville, Florida. The Bureau of Prisons calculated Mr. Torres had completed 14.9% of the sentence as of March 13, 2020.[1]

**A.  Mr. Torres's present health condition.**

Mr. Torres contends he suffers from long-term severe asthma putting him at a higher risk of serious illness or death if he contracts COVID-19 while incarcerated.[2] We ordered his counsel to produce the medical records and our review confirms:

- A January 21, 2020 health screening noted a history of asthma and a prescription for an Albuterol[3] inhaler with the direction: "Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call) PRN x 180 day(s)"[4]

- A February 3, 2020 clinical encounter notes: "Asthma: currently doing, well, denies [shortness of breath], no cough, no past hospitalization, no intubation. Using MDI as needed it."[5] On examination, Mr. Torres's pulmonary function is found "within normal limits" with lung sounds "clear to auscultation" and no "rhonchi, wheezing, inspiratory-wheezing, [or] expiratory-wheezing."[6] The examining physician renewed Mr. Torres's Albuterol prescription and counseled him to follow up with a sick call or chronic care clinic as needed.[7]

2

- A February 11, 2020 chest x-ray is within normal limits and the lungs are clear.[8]

Mr. Torres contends he uses his Albuterol inhaler four times a day.[9] The Bureau of Prisons supplied Mr. Torres an Albuterol rescue inhaler on July 15, 2019.[10] Per the prescription, the rescue inhaler contained enough medication to last for ninety days if used four times daily.[11] There is no record of Mr. Torres receiving another Albuterol prescription until seven months later, on February 3, 2020, suggesting Mr. Torres did not have the need for a sick call for more Albuterol despite the directive he should do so in such a case.[12] There is no record of sick visits or chronic care clinic visits after February 3, 2020 or further testing after February 11, 2020.

In addition to asthma, Mr. Torres suffers from dental issues, osteoarthritis of the knee, "pain in unspecified limb," and an injury of the foot with unspecified decreased range of motion and atrophy from earlier gunshot wounds.[13] Mr. Torres had a prescription for Amitriptyline for pain as needed, but as of February 3, 2020, he refused to take the medication in favor of over-the-counter pain medication.[14] Mr. Torres is also diagnosed with "cannabis use disorder, severe" and a history of withdrawal symptoms to opiates (oxycodone) and marijuana.[15]

**B. Mr. Torres's plan if granted release to home confinement.**

If released to home confinement, Mr. Torres plans to return to his home in Malabar, Florida to live with his domestic partner of thirteen years and their three young children.[16] Mr. Torres plans to find employment, complete his GED and drug treatment.[17] Mr. Torres is skilled in construction work, with a carpentry certification earned in 1998 and experience in tile installation, renovations, and wood framing.[18]

### C. COVID-19 affecting persons held in prisons.

Mr. Torres is correct about the COVID-19's effect on persons serving sentences in prisons. The new, or novel, "coronavirus disease 2019," known as COVID-19, is a respiratory disease spreading through respiratory droplets produced when an infectious person, even those who are asymptomatic, talks, coughs, or sneezes.[19] "Spread is more likely when people are in close contact with one another (within about 6 feet)."[20] COVID-19 spreads "easily and sustainably in the community ("community spread") in many affected geographic areas. Community spread means people have been infected with the virus in an area, including some who are not sure how or where they became infected."[21]

COVID-19, which has now spread throughout the world, poses a serious global public health risk. As of June 26, 2020, the Centers for Disease Control and Prevention reported a total of 2,374,282 cases of COVID-19 in the United States with 121,809 total deaths caused by the virus.[22] People of any age with the following conditions *are at increased risk of severe illness from COVID-19*: chronic kidney disease; COPD (chronic obstructive pulmonary disease); immunocompromised state (weakened immune system) from solid organ transplant; obesity (body mass index [BMI] of 30 or higher); serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies; Sickle cell disease; and Type 2 diabetes mellitus.[23] People of any age with the following conditions *might be at an increased risk for severe illness from COVID-19*: asthma (moderate-to-severe); cerebrovascular disease (affects blood vessels and blood supply to the brain); cystic fibrosis; hypertension or high blood pressure; immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines; neurologic conditions, such

as dementia; liver disease; pregnancy; pulmonary fibrosis (having damaged or scarred lung tissues); smoking; Thalassemia (a type of blood disorder); and Type 1 diabetes mellitus.[24]

Correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons [and] staff[.]"[25] Even people without symptoms can infect others.[26] While we hope most socially distance from each other to avoid community spread, incarcerated persons cannot follow the Center for Disease Control's guidelines to mitigate the spread of the virus and face a heightened risk of contagion.[27] According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[28]

As of June 16, 2020, the five largest known clusters of COVID-19 in this country grew inside correctional institutions.[29] In the last month, the number of known infected incarcerated people doubled and prison deaths increased by seventy-three percent.[30] Testing remains of paramount importance, as one in seven virus tests conducted on incarcerated people have come back positive, and the vast majority of positive people in prison are asymptomatic—yet still shed the virus.[31]

As of June 28, 2020, FCI Coleman-Low reports no cases of COVID-19 among inmates, three staff positive cases, no inmate or staff deaths, one recovered inmate, and two recovered staff.[32]

**D. Mr. Torres exhausted his internal remedies with the Bureau of Prisons.**

On April 15, 2020, Mr. Torres submitted a request to the warden of FCI Coleman for compassionate release seeking "a sentence reduction to time served based on health status-Asthma, nerve damage due to gunshot wounds and the eminent endanger to be exposed to the

5

deadly coronavirus (COVID-19), and the fact that it is impossible to practice 'social distancing' and other prophylactic measures in a prison environment. In alternative, I formally request for immediate release to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act")."[33] On May 14, 2020, the warden denied Mr. Torres's request for "compassionate release/reduction in sentence" under the First Step Act, 18 U.S.C. § 3592.[34] The warden's denial does not reference the CARES Act.

## II. Analysis

Mr. Torres now moves for early release to home confinement under the CARES Act or compassionate release under the First Step Act. The United States opposes the motion. It concedes asthma is a CDC risk factor for COVID-19 but argues the medical records do not support Mr. Torres's claim of "severe" asthma and instead show his asthma is well-controlled. The United States argues Mr. Torres fails to present an "extraordinary and compelling reason" justifying compassionate release.[35]

### A. We do not have authority to transfer to home confinement or review the Bureau of Prison's administrative decision under the CARES Act.

Mr. Torres seeks early release to home confinement under the CARES Act, legislation passed by Congress on March 27, 2020 in response to the COVID pandemic.[36] Among other purposes, "the CARES Act expands the power of the Bureau of Prisons to 'place a prisoner in home confinement' as an alternative to compassionate release"[37] in response to the COVID-19 emergency. Section 12003(b)(2) of the CARES Act, "home confinement authority," provides: "[d]uring the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in

6

home confinement under the first section of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate."[38]

Attorney General William Barr made such a finding on April 3, 2020, instructing the Bureau of Prisons to "make the most of this expanded power by placing in home confinement 'all inmates whom [the Bureau] deem[s] suitable candidates.'"[39] Section 3624(c)(2) provides: "[t]he authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months. The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph."[40]

The United States argues we do not have authority to grant a transfer to home confinement or review the Bureau of Prison's administrative decision because, under 18 U.S.C. § 3621(b), a "designation of a place of imprisonment under this subsection is not reviewable by any court."[41] Mr. Torres replies the United States ignores the amendment to the First Step Act, at 18 U.S.C. § 3852(c)(1)(A), allowing inmates a direct route to court, citing *United States v. Young*, a decision from the United States District Court for the Middle District of Tennessee.[42] The district court's decision in *Young* involves the First Step Act, not the CARES Act. These are two different federal laws. As discussed below, Mr. Torres may directly petition the courts for compassionate release under the First Step Act's amendment of section 3582(c)(1)(A). The United States does not contest our authority to review a motion for compassionate release under the First Step Act; it only contests our authority to transfer Mr. Torres to home confinement under the CARES Act.

The United States is correct. "District Courts considering the CARES Act § 12003 and the Attorney General's directive consistently conclude that the determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director."[43] The CARES Act allows

7

the increased use of home confinement by the Bureau of Prisons, and does "not give courts control over an inmate's place of incarceration or the BOP's exercise of its placement authority."[44] We accordingly deny Mr. Torres's motion for release to home confinement under the CARES Act.[45]

### B. Mr. Torres's asthma does not constitute an extraordinary and compelling reason for compassionate release.

Mr. Torres alternatively seeks compassionate release under the "extraordinary and compelling reasons" exception in First Step Act, 18 U.S.C. § 3582(c)(1)(A).[46] The First Step Act, passed by Congress in December 2018, amended section 3582(c)(1)(A) "to allow prisoners to directly petition courts for compassionate release, removing the [Bureau of Prison's] exclusive 'gatekeeper' role."[47] Under the Act, prisoners have "two direct routes to court: (1) file a motion after fully exhausting administrative appeals of the [Bureau of Prison's] decision not to file a motion, or (2) file a motion after 'the lapse of 30 days from the receipt ... of such a request' by the warden of the defendant's facility, 'whichever is earlier.'"[48]

Congress allows us to reduce a sentence through compassionate release if we determine (1) the incarcerated movant meets administrative exhaustion requirements,[49] (2) "extraordinary and compelling reasons" warrant a reduction, (3) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission"; and, (4) the applicable sentencing factors under 18 U.S.C. §3553(a) warrant a reduction.[50]

Application Note 1 to Section 1B1.13 of the United States Sentencing Guidelines enumerates three specific reasons qualifying as "extraordinary and compelling" and one "catch-all" provision.[51] The policy statement provides to constitute "extraordinary and compelling reasons," we must find:

(A)     Medical Condition of the Defendant.—

(i)     The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)    The defendant is—

    (I)     suffering from a serious physical or medical condition,

    (II)    suffering from a serious functional or cognitive impairment, or

    (III)   experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the defendant.—

. . .

(C) Family Circumstances.—

. . .

(D) Other Reasons.—As determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[52]

Mr. Torres asserts he faces a heightened risk of serious illness or death from COVID-19 because of his asthma under Section 1B1.13(A).[53] He argues it is impossible to social distance in prison; "[e]ven in the best of times medical care is strained and often lacking" in the federal prison system; the number of coronavirus cases is increasing exponentially and, at last count, there are over 2,200 cases of coronavirus among inmates and staff with at least fifty-seven deaths.[54] Mr. Torres argues the COVID-19 pandemic and his "underlying health conditions" constitute

9

extraordinary and compelling reasons warranting early release; he is not a danger to the community; and the section 3553(a) factors warrant his early release to home confinement.[55]

The United States responds Mr. Torres is not eligible for compassionate release because he does not present a condition identified as a risk factor for an adverse outcome from COVID-19.[56] The United States concedes moderate to severe asthma is a risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, but argues his asthma is not severe as he claims. It cites the medical record showing Mr. Torres did not seek or receive treatment while incarcerated for an acute asthmatic episode; his use of prescription drugs to manage his asthma is minimal; and his February 2020 examination by Bureau of Prisons physicians noted he is "currently doing[]well, denie[d] [shortness of breath], no cough, no past hospitalization, no intubation"; and Mr. Torres's report to physicians "his most recent asthma attack was many years ago, and he denie[d] any hospitalization related to asthma."[57] The United States additionally cites the efforts taken by the Bureau of Prisons to control the spread of COVID-19.[58]

Mr. Torres replies "although he suffers from nerve damage and severe asthma, he is in otherwise good health."[59] He concedes these "are facts," but "they are not the only facts."[60] He argues "[t]here are other facts, and, whereas it is not a fact that he will contract the coronavirus, it is a fact that he is at greater risk to do so because of several immutable facts:" (1) the pre-sentence report notes Mr. Torres is a long-term sufferer of asthma;[61] (2) social distancing is impossible in a federal prison; and (3) he has no ability to protect himself from exposure to other inmates or staff who, since May 1, have been exposed to the increased risk of COVID-19 because of Florida's early re-opening.[62] The United States does not dispute Mr. Torres has asthma; it disputes his asthma is severe enough to constitute extraordinary and compelling reasons warranting

compassionate release. Mr. Torres does not provide us with any additional information or medical documents showing the severity of his asthma.

The Centers for Disease Control and Prevention advises "people with moderate to severe asthma may be at higher risk of getting very sick from COVID-19. COVID-19 can affect your respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to pneumonia and acute respiratory disease."[63] "The U.S. Department of Health and Human Services provides that moderate asthma occurs if, without treatment, any of the following are true: Symptoms occur daily; Inhaled short-acting asthma medication is used every day; Symptoms interfere with daily activities; Nighttime symptoms occur more than 1 time a week, but do not happen every night; or Lung function tests are abnormal (more than 60% to less than 80% of the expected value)."[64]

Mr. Torres's medical records do not show moderate to severe asthma; at his only medical visit in 2020, Mr. Torres reported he is doing well, denied shortness of breath, no past hospitalizations, and used his inhaler as needed. On examination his pulmonary function is within normal limits with no wheezing or rhonchi. A February 11, 2020 chest x-ray showed Mr. Torres's lungs are clear. The record reflects Bureau of Prisons' physicians first prescribed Albuterol on July 15, 2019 and dispensed the medication to him again on February 3, 2020.[65] As of June 11, 2020, there is no record of a renewed prescription for Albuterol.[66] Each prescription includes the direction: "shake well and Don't use daily. Inhale 2 puffs by mouth 4 times a day as needed to prevent/relieve asthma attack (inhaler to last 90 days. If need more, make sick call)."[67] The direction expects the inhaler to last ninety days but if more medication is needed, Mr. Torres is directed to make a sick call. There is no record Mr. Torres scheduled a follow up sick visit for asthma or any other medical issue. There is no evidence the Bureau of Prisons is failing in its management of his asthma.

Mr. Torres is thirty-six-years-old and has no other medical risk factors. No inmates at FCI Coleman-Low are positive for COVID-19, there are three staff positive cases, no inmate or staff deaths, one recovered inmate, and two recovered staff. We understand Mr. Torres's concern regarding COVID-19, but a general fear of contracting the virus does not constitute extraordinary and compelling reasons for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[68] Multiple district courts reviewing compassionate release motions conclude mild asthma is not an extraordinary and compelling reason, including from this district court and two decisions from the district courts in Florida addressing motions from inmates at FCI Coleman Low.[69]

The objective medical evidence presented by Mr. Torres shows mild asthma which is not a risk factor for severe illness from COVID-19, his condition appears to be controlled by medication, and there are currently no cases of COVID-19 at FCI Coleman-Low. These mitigate against a finding of an extraordinary and compelling reason warranting compassionate release at this time. We deny Mr. Torres's motion without prejudice to renew if he experiences a change in his medical condition.

### C. Even assuming Mr. Torres shows an extraordinary and compelling reason, our analysis of section 3553(a) factors requires denial.

As Mr. Torres cannot show an extraordinary and compelling reason, we need not proceed into further analysis of whether release comports with policy statements and evaluate Mr. Torres's possible release by applying the factors under 18 U.S.C. § 3553(a). If Mr. Torres's present asthma constituted a serious medical condition, we would then analyze the factors under section 3553(a). "Section 3582(c)(1)(A) requires us to consider the 'factors set forth in section 3553(a) to the extent they are applicable' before we may reduce a sentence. These factors include the need to: 'reflect the nature and circumstances of the offense and the history and characteristics of the defendant';

'reflect the seriousness of the offense'; 'promote respect of the law'; and 'afford adequate deterrence to criminal conduct.'"[70]

The United States argues even if Mr. Torres's asthma presented a risk factor, we must nevertheless deny his motion because he has served only nineteen percent of his sentence and his past criminal history demonstrates he is a danger to the community and is a flight risk.[71] The United States contends Mr. Torres's current conviction is for the possession of two kilograms of cocaine with the intent to distribute; during the course of the crime, he led Drug Enforcement Agency agents on a high-speed chase through crowded streets in Philadelphia; he has a prior conviction for carrying a firearm without a license in Philadelphia in 2007; and a felony conviction for criminal conspiracy to distribute cocaine in Bucks County in 2009.

Mr. Torres does not address the United States' argument in his reply brief. He asserts in his moving brief, however, his current offense did not involve violence or a threat of violence; he was free on bond for eight months at his home in Florida prior to sentencing without violating conditions of release; he has not committed any infractions and has a clear disciplinary record during custody; and his offense history does not include "any violence, sex, or terrorism."[72] Mr. Torres's tells us he "has a verifiable release plan: to return to Malabar, Florida to live with Marcia Moran, his domestic partner of 13 years, and their three young children, in the residence where he resided with them while on pre-trial release prior to his guilty plea."[73]

Even if we were to reach the section 3553 factors, we could not release Mr. Torres. He committed a serious crime after two earlier convictions. He led federal agents on a high-speed chase. To date, he has chosen a life of drugs and guns. We sentenced him to sixty-three months given his conduct and a deterrent. He has not shown respect for the law. We have no basis to find a section 3553 factor supports releasing Mr. Torres at this early stage of his necessary sentence.

13

### III. Conclusion

Having failed to establish an extraordinary and compelling reason warranting compassionate release under 18 U.S.C. § 3582(c)(1)(A), we deny Mr. Torres's motion in the accompanying order without prejudice.

---

[1] ECF Doc. No. 68 at 21 (using the pagination assigned by the CM/ECF docketing system).

[2] *Id.* at ¶ 4.

[3] Albuterol is an [i]nhaled short-acting beta-2 agonist (SABA); available in nebulizer solutions and inhalers. Used in adults and pediatrics for the management of asthma, acute bronchospasm, and prevention of exercise-induced bronchospasm." *See* https://www.pdr.net/drug-summary/Albuterol-Sulfate-Inhalation-Solution-0-5--albuterol-sulfate-1426.4211.

[4] ECF Doc. No. 75 at 10-11 (using the pagination supplied by the CM/ECF docketing system).

[5] *Id.* at 16. An "MDI" is a "metered dose inhaler" used to deliver respiratory medicine.

[6] *Id.* at 17, 25. "Ausculation" is defined as "listening for sounds produced within the body, chiefly to assess the condition of the thoracic or abdominal organs and vessels such as the heart, lungs, aorta, and intestines"; "rhonchi" is defined as "[c]ontinuous wheezing sounds of low or high pitch heard with a stethoscope when listening to the breath sounds. Rhonchi are caused by partial obstruction of the smaller breathing tubes in the lungs (bronchioles) by swelling of the lining or by the presence of thick mucus"; and "wheezing" is defined as "a high-pitched whistling sound associated with labored breathing." *See* https://medical-dictionary.thefreedictionary.com. Generally, more serious asthma cases present with such symptoms. *See* U.S. Department of Health and Human Services, National Institutes of Health, *Asthma Care Quick Reference*, at 5, https://www.nhlbi.nih.gov/files/docs/guidelines/asthma_qrg.pdf (last visited June 18, 2020).

[7] ECF Doc. No. 75 at 18.

[8] *Id.* at 32.

[9] ECF Doc. No. 68 at ¶ 4.

[10] ECF Doc. No. 75 at 47.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 3, 16; ECF Doc. No. 68 at ¶ 4.

---

[14] ECF Doc. No. 75 at 3, 11, 18, 19. Amitriptyline is an antidepressant "FDA-approved for use in adults for the treatment of depression; used off-label for neuropathic pain and other uses" *See* https://www.pdr.net/drug-summary/Amitriptyline-Hydrochloride-amitriptyline-hydrochloride-1001.5733.

[15] ECF Doc. No. 75 at 34, 40.

[16] ECF Doc. No. 68 at 8.

[17] *Id.* at 13.

[18] *Id.* at 18.

[19] Centers for Disease Control and Prevention, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ftransmission.html (last visited June 26, 2020).

[20] Centers for Disease Control and Prevention, *Coronavirus 2019 Basics*, https://www.cdc.gov/coronavirus/2019-ncov/faq.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fprepare%2Ffaq.html#Coronavirus-Disease-2019-Basics (last visited June 26, 2020).

[21] *Id.*

[22] Centers for Disease Control and Prevention, *Cases of Coronavirus Disease (COVID-19) in the U.S.*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited June 26, 2020).

[23] Centers for Disease Control and Prevention, *People Who Need Extra Precautions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited June 26, 2020) (emphasis added).

[24] *Id.* (last visited June 26, 2020) (emphasis added).

[25] Centers for Disease Control and Prevention, *Guidance for Correctional Detention*, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited June 26, 2020).

[26] Monica Ghandi, et al, *Asymptomatic Transmission, the Achilles' Heel of Current Strategies to Control Covid-19*, The New England Journal of Medicine, April 24, 2020, https://www.nejm.org/doi/full/10.1056/NEJMe2009758 ("[L]ive coronavirus clearly sheds at high

concentrations from the nasal cavity even before symptom development…asymptomatic persons are playing a major role in the transmission of SARS-CoV-2.").

[27] *See, e.g.*, Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047, 1047 (Oct. 2007) (noting "[t]he probability of transmission of potentially pathogenic organisms [in prisons] is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise").

[28] "Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States," (March 2, 2020), at https://bit.ly/2W9V6oS.

[29] Timothy Williams, *et al.*, *Coronavirus Cases Rise Sharply in Prisons Even as They Plateau Nationwide*, June 16, 2020, available at https://www.nytimes.com/2020/06/16/us/coronavirus-inmates-prisons-jails.html.

[30] *Id*.

[31] *Id*.

[32] *See* https://www.bop.gov/coronavirus (last visited June 29, 2020).

[33] ECF Doc. No. 68 at 14.

[34] *Id.* at 12.

[35] ECF Doc. No. 71.

[36] Pub. L. No. 116-136.

[37] *United States v. Alam*, No. 20-1298, 2020 WL 2845694, at *5 (6th Cir. June 2, 2020).

[38] Pub. L. No. 116-136, § 12003(b)(2).

[39] *Alam*, 2020 WL 2845694 at * 5 (quoting *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Office of Attorney General (Apr. 3. 2020)); *United States v. Delacruz*, No. 17-cr-77, 17-cr-201, 2020 WL 3405723, at * 5 (M.D. Pa. June 19, 2020)).

[40] 18 U.S.C. § 3624(c)(2).

[41] ECF Doc. No. 71 at 7, n.1.

[42] No. 00-cr-2, 2020 WL 1047815 (M.D. Tenn. Mar. 4, 2020).

---

[43] *Delacruz*, 2020 WL 3405723, at *5 (collecting cases). *See also*, *United States v. Cruz*, No. 95-cr-204, 2020 WL 1904476, at *4 (M.D. Pa. Apr. 17, 2020) ("the determination of which inmates qualifies for home confinement under the CARES Act is with the BOP Director.")

[44] *Delacruz*, 2020 WL 3405723, at *5. *See also*, *United States v. Komoroski*, No. 17-cr-156, 2020 WL 3265459, at *10 (M.D. Pa. June 17, 2020) ("the court has no authority to direct the BOP to place [defendant] in home confinement and the determination of which defendant qualifies for home confinement under the CARES Act is with the BOP Director") (collecting cases); *United States v. Mansaray*, No. 13-cr-236, 15-cr-526, 2020 WL 3077184, at *3 (E.D. Pa. June 10, 2020) ("Congress did not provide the Courts with the authority to review the BOP Director's decision whether to release inmates into home confinement at an earlier time under the CARES Act") (collecting cases).

[45] In *Delacruz*, the court determined "an inmate requesting to serve the remainder of his sentence in home confinement is seeking relief as to how his sentence is executed and the only avenue which would allow him to proceed in federal court is a petition under 28 U.S.C. § 2241." *Delacruz*, 2020 WL 3405723, at *5 (citing *United States v. Donahue*, No. 11-cr-33, 2020 WL 3001393, at *5 (M.D. Pa. June 4, 2020); *United States v. Serfass*, No. 15-cr-39, 2020 WL 1874126, at *3 (M.D. Pa. Apr. 15, 2020)).

[46] Section 3582(c)(1)(A) provides:

> (c) Modification of an imposed term of imprisonment.--The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)   extraordinary and compelling reasons warrant such a reduction;
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; …

*Id.* § 3582(c)(1)(A).

[47] *United States v. Rodriguez*, No. 03-271, 2020 WL 1627331, at *2 (E.D. Pa. Apr. 1, 2020) (footnote omitted).

[48] *Id.* at * 3 (citing 18 U.S.C. § 3852(c)(1)(A)).

[49] There is no dispute Mr. Torres exhausted his administrative requirements.

[50] 18 U.S.C. § 3582.

[51] U.S.S.G. § 1B1.13.

[52] *Id.*

[53] Mr. Torres argues only his medical condition under subsection (A). He does not argue age under subsection (B), nor could he because he is not over age sixty-five; the "family circumstances" reasons of subsection (C) for "the death or incapacitation of the caregiver of the defendant's minor child or minor children" or [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner"; or the "catch-all" reasons in subsection (D) as "determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13. Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), FSG § 1B1.13.

[54] ECF Doc. No. 68 at 7.

[55] *Id.* at 10.

[56] ECF Doc. No. 71 at 11.

[57] *Id.* The United States refers to a clinical encounter on August 21, 2019 when a Bureau of Prisons physician examined Mr. Torres who reported a chief complaint of "pulmonary/respiratory." At that time, Mr. Torres reported a history of asthma, denied coughing, wheezing, chest pain, shortness of breath, difficulty breathing, dizziness, or other respiratory complaint. He reported using his Albuterol rescue inhaler about twice a month and his most recent asthma attack "was many years ago, and denie[d] any hospitalization related to asthma." Mr. Torres submitted the medical records to the Court and the United States Attorney's office but did not file on the docket records from August 2019. He filed his 2020 medical records, noting he is in possession of his Bureau of Prison medical records for 2018 and 2019 "which were not called for the Court's Order of June 9, 2020 [sic], but will be retained by Defendant for possible future reference." ECF Doc. No. 75 at 2. Our June 9, 2020 order directed Mr. Torres to file his medical records since January 1, 2020 under seal. ECF Doc. No. 69.

[58] ECF Doc. No. 71 at 3-8.

[59] ECF Doc. No. 72 at 1.

[60] *Id.*

[61] The presentence report is not public record. Upon our review, the paragraph referred to by Mr. Torres states he reports overall good health except for suffering nerve damage in his left foot resulting from gunshot wounds "as well as asthma." There is no qualification of the severity or duration of his asthma, only that he suffers from it which no one disputes.

[62] ECF Doc. No. 72 at 1. As of June 28, 2020, Florida reports 141,075 in total COVID-19 cases and 3,419 deaths. *See* https://floridahealthcovid19.gov. We are aware of reporting on the rapidly increasing cases of COVID-19 in Florida, including a report cases increased five fold in two weeks. *See* Frances Robles, *Florida's Covid Cases Up Fivefold in 2 Weeks: 'The Numbers Are Scary'*, June 28, 2020, available at https://www.nytimes.com/2020/06/28 /us/coronavirus-florida-miami.html. But the statistics remain the same for cases of COVID-19 in FCI Coleman-Low. To date, there are currently no inmate cases and three staff cases.

[63] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited June 26, 2020).

[64] *United States v. Towel*, No. 17- 519-6, 2020 WL 2992528, at * 4 (E.D. Pa. June 4, 2020) (citing Asthma Care Quick Reference Guide, U.S. Dep't of Health and Human Servs. (Sept. 2012), https://www.nhlbi.nih.gov/sites/default/files/media/docs/12-5075.pdf).

[65] ECF Doc. No. 75 at 47. It appears Mr. Torres transferred to FCI Coleman-Low in January 2020. *Id.* at 3.

[66] *Id.*

[67] In *Towel*, the court found defendant did not present symptoms of moderate asthma, reasoning (a) the Bureau of Prisons issued a rescue Albuterol inhaler and "the prescription for this inhaler specifically stated that it should *not* to be used on a daily basis but for isolated attacks as necessary"; (b) evidence showed use of inhaler is not needed to manage daily asthma symptoms because defendant did not renew his initial prescription for more than ten months, confirmed he does not need an inhaler to manage daily asthma symptoms, and does not have general shortness of breath; and (c) lung function is normal. *Towel*, 2020 WL 2992528 at * 4.

[68] *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system, particularly for inmates like Raia. But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread.")

[69] Eastern District of Pennsylvania cases: *United States v. Carter*, No. 18-561-1, 2020 WL 3412571, at *3-*4, *7 (E.D. Pa. June 22, 2020) (based on the objective medical evidence,

defendant's mild case of asthma does not constitute a compelling reason to justify pre-trial release); *Towel*, 2020 WL 2992528, at * 4-*5 (defendant presents with "mild, exercise-induced asthma, which is not a risk factor for severe illness due to COVID-19. His asthma also appears to be well-controlled in the MDC. As a result, Towel's asthma and the COVID-19 pandemic are not extraordinary and compelling circumstances warranting Towel's release at this time.").

Florida district courts cases involving FCI Coleman-Low: *United States v. Smith*, No. 17-412, 2020 WL 2512883 (M.D. Fla. May 15, 2020) ("While Smith alleges he suffers from asthma, he does not allege he has been unable to receive treatment at his facility or that the plan proposed by the BOP is inadequate to manage the pandemic within his facility should the need arise. On this record, Smith fails to demonstrate that his asthma coupled with the possibility of COVID-19 constitutes an extraordinary and compelling reason under 18 U.S.C. § 2385(c)(1)(A) and U.S.S.G. § 1B1.13."); *United States v. Leon*, No. 19-14043, 2020 WL 2767360, *2 (S.D. Fla. May 28, 2020) ("The Court is sympathetic to the health challenge that Leon identifies in his Motion. And the Court understands that he has legitimate concerns about the spread of COVID-19 at FCI Coleman – Low. However, the Court must view those concerns in conjunction with the facts as best the Court is able to ascertain them. Those facts are that FCI Coleman – Low has had only one confirmed case of an inmate contracting COVID-19 and that the BOP has implemented mitigation measures in accordance with its role to protect the inmates within its facilities. The Court has been presented with no information that would indicate that these measures will be ineffective at FCI Coleman – Low. Under the present circumstances, the Court does not find extraordinary and compelling reasons that warrant a reduction of Leon's sentence.").

Recent decisions from other district courts: *United States v. Ramos*, 15-00210, 2020 WL 3440929, at *6 (D.Hawaii June 23, 2020) (although suffering from chronic asthma, evidence shows asthma is controlled with medication and defendant failed to demonstrate she is at a higher risk or particularly vulnerable to contracting COVID-19 and suffering from serious complications thus there is no extraordinary and compelling reason for sentence reduction); *United States v. Okpalobi*, No. 13-cr-101, 2020 WL 3429939, at *2-*3 (E.D. La. June 23, 2020) (asthma requiring use of inhaler less than weekly, hypertension, coronary disease, and bronchitis do not do not meet the "extraordinary and compelling" reasons standard); *United States v. Harding*, No. 14-226, 2020 WL 2988955, at *2-*3 (D. Conn. June 4, 2020) (thirty-four year old defendant suffering from mild intermittent asthma, is "stable" and controlled and does not render him vulnerable); *United States v. Wheeler*, No. 19-85, 2020 WL 2801289, at *3-*4 (D.D.C. May 29, 2020) ("mild intermittent asthma" not considered to be an extraordinary and compelling reason for release); *United States v. Evans,* No. 13-67, 2020 WL 2543142, at *3-*4 (D. Del. May 19, 2020) (records show defendant as generally young individual with mild asthma and does not demonstrate extraordinary and compelling circumstances).

[70] *United States v. Nesbitt*, No. 09-cr-181, 2020 WL 3412577, at *3 (E.D. Pa. June 22, 2020).

[71] ECF Doc. No. 71 at 14-15.

[72] ECF Doc. No. 68 at ¶¶ 6, 7, 9.

[73] *Id.* at ¶ 8.